# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED
May 20, 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SEALED

United States of America
v.
RAMIRO LUNA , ET. AL.

*Defendant(s)*

Case No. 5:26-mj-00020-CDB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 20, 2026 in the county of Kern in the Eastern District of California , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. Section 841(a)(1) | Possession with Intent to Distribute Controlled Substance |
| 21 U.S.C. Section (846) | Conspiracy |

This criminal complaint is based on these facts:

See attached affidavit incorporated herein.

☑ Continued on the attached sheet.

*Complainant's signature*

Blake McEntire, DEA Special Agent

*Printed name and title*

Sworn to before me and signed consistent with Fed. R. Crim. P. 4.1.

Date: 05/20/2026

*Judge's signature*

City and state: Bakersfield, CA

Christopher D. Baker, U.S. Magistrate Judge

*Printed name and title*

FILED
May 20, 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ERIC GRANT
United States Attorney
LUKE BATY
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

SEALED

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RAMIRO LUNA , ET. AL.

Defendants.

CASE NO. 5:26-mj-00020-CDB

AFFIDAVIT OF
SPECIAL AGENT BLAKE MCENTIRE

I, Blake H. McEntire, hereby declare and state as follows:

1. I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been employed as a Special Agent (SA) with the Drug Enforcement Administration (DEA) since January 2023. Since June 2023, I have been assigned to the DEA's Bakersfield Resident Office in Bakersfield, California. As part of my training, I received approximately sixteen (16) weeks of training in narcotics investigations at the DEA Justice Training Center in Quantico, Virginia.

3. Prior to being employed by the DEA, I was a Deportation Officer (DO) with Immigration and Customs Enforcement (ICE) from 2020 to 2022, stationed in Fresno, California. As part of that training, I received seventeen (17) weeks of specialized federal law enforcement training at the Federal

Law Enforcement Training Center (FLETC) in Glynco, Georgia.

4. As a DEA Special Agent, I have been the case agent and assisted other agents and officers in investigations involving violations of Title 21, United States Code, Section 841(a)(1), the manufacture of, distribution of and possession with intent to distribute controlled substances; and Title 21, United States Code, Section 846, 841(a)(1) conspiracy to commit the foregoing. Specifically, those investigations have focused on the manufacture and distribution of fentanyl, marijuana, methamphetamine, heroin and cocaine. I am familiar with, and have participated in, conventional investigative methods, including, but not limited to, electronic surveillance, visual surveillance, wiretap investigations, questioning of witnesses, search warrants, confidential informants, and pen registers. I have also become acquainted with the various methods used by individuals to possess, transport, and sell controlled substances in violation of federal law.

5. This affidavit is in support of a complaint charging Ramiro LUNA and Robert Joseph GRAY with a violation of Title 21, United States Code, §§ 846, 841(a)(1), the manufacture of, distribution of and possession with intent to distribute controlled substances and conspiracy to commit the same. The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all the information known to me and other law enforcement investigators. Rather, this affidavit serves only to establish probable cause for the complaint and arrest of Ramiro LUNA and Robert Joseph GRAY.

6. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents of the DEA and other members of law enforcement, and from my review of records and reports relating to the investigation.

7. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another DEA agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

**STATEMENT OF PROBABLE CAUSE**

8. On April 20, 2026, Kern County Sheriff's Deputy J. Morales (203625) and his canine partner Cobra were conducting domestic highway enforcement on Interstate 5 in Bakersfield, Kern County, Eastern District of California. During Deputy Morales' enforcement, Deputy Morales observed a black Toyota sedan bearing California license plate 9ELW925 driving southbound with dark window tint on both the front driver and passenger windows in violation on California Vehicle Code (VC) 26708(a).

9. A California Department of Motor Vehicles search for California license plate number 9ELW925 revealed that the vehicle is a 2019 Honda registered to a Noe Lopez Salas or Carmina Gonzalez Valencia Lucita at 3655 W. Terrace Ave, Fresno, CA. Due to the dark window tint, Deputy Morales initiated a traffic enforcement stop by activating his emergency overhead light bar with flashing lights and solid forward facing red light. The vehicle yielded to Deputy Morales and exited on Grapevine Road.

10. Deputy Morales approached the passenger side of the vehicle and observed the vehicle to be occupied by two individuals. Deputy Morales informed both occupants for the reason of the stop and instructed them to not reach for anything inside of the vehicle.

11. Deputy Morales walked to the driver side of the vehicle and instructed the driver of the vehicle to provide Deputy Morales with his driver's license, vehicle registration, and proof of insurance. The driver provided Deputy Morales with the requested items. Deputy Morales identified the driver of the vehicle to be Ramiro LUNA. During this encounter, Deputy Morales noticed three black trash bags in the rear passenger seat of the vehicle within reach of both LUNA and GRAY. When questioned about the bags, LUNA stated that the bags were filled with clothes. (See Photos Below)





12. At this time, Deputy Morales asked LUNA to step out of the vehicle. Deputy Morales asked LUNA for consent to pat LUNA down to search for any weapons. LUNA consented. After the pat down was conducted, Deputy Morales instructed LUNA to stand next to Deputy Morales' patrol car. At this time, Deputy Morales noticed that LUNA became very nervous and started sweating profusely.

13. Deputy Valadez arrived on scene to assist Deputy Morales. Deputy Morales notified Deputy Valadez that Deputy Valadez could start issuing LUNA a citation for the obstructed window violation. While Deputy Valadez was issuing the citation, Deputy Morales identified the passenger of the vehicle as Robert Joseph GRAY. Deputy Morales conducted a records check of GRAY and identified GRAY as having four active misdemeanor warrants out of San Bernardino County.

14. Deputy Valadez then detained GRAY in handcuffs for the open warrants. During a search of GRAY's person, Deputy Valadez located a glass pipe containing white residue and a clear baggie containing a crystalline substance consistent with the appearance of methamphetamine inside GRAY's front pants pocket. Based on this, I believe that GRAY knew was familiar with the appearance of methamphetamine.

15. Deputy Morales received approval from Sergeant Coleman to deploy his canine partner Cobra to assist with the investigation. Deputy Morales asked LUNA if there were any illegal items inside of the vehicle. LUNA nodded his head up and down and whispered to Deputy Morales stating that there was "meth" inside the vehicle. Based on my training and experience, the word "meth" is a common term used to refer to crystal methamphetamine.

16. Deputy Morales and Cobra walked towards LUNA's vehicle to conduct an open-air sniff of the exterior of the vehicle. Deputy Morales observed a change in Cobra's behavior as Cobra began to sniff the driver side door of the vehicle. Deputy Morales recognized this behavior as Cobra identifying a large amount of narcotic odor. Cobra continued to sniff around the vehicle and eventually sat and maintained a focused stare at the driver side rear passenger door. Deputy Morales recognized Cobra's behavior as a positive alert to the presence of narcotics inside the vehicle.

17. Deputy Morales confronted LUNA about the positive alert and LUNA stated, "it's in the container in the front dashboard". Based on the developed probable cause from the positive canine alert

and LUNA confirming the presence of narcotics, Deputy Morales conducted a search of the vehicle.

18. Upon search of the vehicle, Deputy Morales opened the black trash bags in the vehicle and observed multiple individually packed Ziplock bags containing large crystalline shards resembling that of crystal methamphetamine. (See Photo Below.)




19. Deputy Morales conducted a *Mirandized* interview with LUNA.

20. LUNA admitted that he had obtained the methamphetamine in the Kern County area, and he was meant to deliver the methamphetamine to the San Bernadino area. LUNA stated he was making the delivery in order to pay off gambling and loan debt he had accrued to the same unknown male who gave him the narcotics.

21. LUNA told Deputy Morales that GRAY did not know what was in the trash bags.

22. Separately, Deputy Valadez conducted a mirandized interview with GRAY. GRAY stated that he occasionally rides with LUNA and got in his vehicle that morning around 3 or 4 am. GRAY stated "he had a pretty good idea of what was inside" the trash bags.

23. Based on this admission, along with GRAY's possession of methamphetamine in his pocket, I believe that GRAY had knowledge of methamphetamine in the trash bags in the backseat.

24. Based on these findings, Deputies Morales and Valadez placed both LUNA and GRAY under arrest.

25. Deputy Morales seized the three black trash bags inside the vehicle containing suspected methamphetamine and continued searching the vehicle. Deputy Morales located and seized an additional two black trash bags in the trunk area of the vehicle also containing suspected crystal methamphetamine.

26. Both LUNA and GRAY were transported and booked into the Kern County Sheriff

Justice Facility.

27. At the conclusion of the investigation, the Kern County Sheriff's Office High Intensity Drug Trafficking Area (HIDTA) took over custody of the seized narcotics. Deputies weighed the seized narcotics and determined the total package weight of the suspected methamphetamine to be 320.6 pounds. The suspected methamphetamine was booked in the Kern County Sheriff's Office property room.

28. Based on my training and experience, I know that 320 pounds of methamphetamine is not a personal use amount. I also know from my training and experience that narcotics packaged in individual baggies are almost always intended to be sold or distributed in some manner.

29. Based on my training and experience investigating drug trafficking organizations (DTOs), I believe that both LUNA and GRAY knowingly participated in the transportation of the methamphetamine and shared the intent to distribute it. The approximately 300 pounds of methamphetamine was contained in black trash bags located in the rear seat of the vehicle and in immediate proximity to LUNA and GRAY. Based on my training and experience, a quantity of this magnitude — far exceeding any amount consistent with personal use and carrying an approximate street value of $240,000—cannot reasonably go undetected by an occupant of the same vehicle, given its bulk, weight, and the distinctive chemical odor commonly associated with large quantities of methamphetamine.

I further know, based on my training, experience, and familiarity with the methods and practices of DTOs, that drug trafficking organizations routinely employ multiple individuals when acquiring and transporting large quantities of controlled substances. The use of a passenger serves several operational purposes for the DTO, including providing security for the load, monitoring and avoiding law enforcement activity during transport, and reducing the risk of loss to the organization should the driver be stopped or incapacitated. As a result of these security needs, DTOs are often very careful about who they allow around the load of narcotics during transport, often minimizing the presence of non-DTO individuals due to the risk of theft and law enforcement interaction. Based on these known practices, I believe that GRAY's presence in the vehicle was not coincidental, but rather that GRAY was acting in

furtherance of the conspiracy to possess with intent to distribute the methamphetamine. As a result, I believe that LUNA and GRAY intended to distribute the narcotics.

30. The above facts set forth probable cause to believe that Ramiro LUNA and Robert Joseph GRAY were in violation of Title 21, United States Code, §§ 846, 841(a)(1), the manufacture of, distribution of and possession with intent to distribute controlled substances and conspiracy to commit the same.

## REQUEST TO SEAL

31. I further request that the Court seal all papers submitted in connection with this Affidavit, except that copies may be maintained by the U.S. Attorney's Office and may be served on counsel for the defendants, Special Agents and other law enforcement officers and federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such law enforcement officers, as needed. These documents pertain to an ongoing criminal investigation that is neither public nor known to all of the targets of this investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize this investigation and endanger the safety of agents and the general public at the time the search and arrest warrants are executed.

Respectfully submitted,

Blake McEntire
Special Agent, Drug Enforcement Administration

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim.P 4(d) and 4.1 this 20th day of May 2026.

Christopher D. Baker
U.S. Magistrate Judge, Eastern District of California

Reviewed and approved as to form:
/s/ Luke Baty

Luke Baty
Assistant U.S. Attorney